**No. 26-1252**

In the

# United States Court of Appeals For the Fourth Circuit

NETCHOICE,

*Plaintiff-Appellee,*

v.

JAY JONES, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE COMMONWEALTH OF VIRGINIA,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Eastern District of Virginia, Case No. 1:25-cv-02067
Hon. Patricia T. Giles, U.S. District Judge

## OPPOSED RENEWED MOTION FOR STAY OF PRELIMARY INJUNCTION PENDING APPEAL

JAY JONES
*Attorney General*
TILLMAN J. BRECKENRIDGE
*Solicitor General*
MEGAN C. KEENAN
*Deputy Solicitor General*
TRISTON C. O'SAVIO
*Assistant Solicitor General*
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219
T: (804) 786-2071
F: (804) 786-1991
SolicitorGeneral@oag.state.va.us

BENJAMIN L. HATCH
McGuireWoods LLP
World Trade Center
101 West Main Street, Ste. 9000
Norfolk, VA 23510
T: 757.640.3727
F: 757.640.3947

ERIN B. ASHWELL
JOHN D. ADAMS
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
T: 804.775.1002
F: 804.775.2002

July 2, 2026

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

BACKGROUND .......... 4

A. Virginia enacts the Parental Control Provision to stop a youth public health crisis. .......... 4

B. The district court enjoins the Provision .......... 7

C. Virginia moves for a stay pending appeal .......... 8

STANDARD OF REVIEW .......... 9

ARGUMENT .......... 10

I. Virginia's renewed motion is procedurally proper. .......... 11

II. Virginia is likely to succeed on the merits of its appeal. .......... 11

A. NetChoice lacks standing to assert the rights of Virginia's children. .......... 12

B. The district court misapplied the facial-challenge standard. .......... 14

C. The Parental Control Provision is content neutral. .......... 18

1. The Provision does not discriminate based on content. .......... 18

2. The Provision draws permissible distinctions between speakers. .......... 21

D. The Provision survives intermediate scrutiny .......... 22

E. The Provision survives strict scrutiny .......... 25

III. The equities favor a stay pending appeal. .......... 26

A. Virginia will be irreparably harmed. .......... 26

B. NetChoice will not suffer irreparable injury. .......... 27

C. The public interest favors staying the injunction ............... 28

CONCLUSION ........................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*,
585 U.S. 579 (2018) ........ 27

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ........ 11

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361 (4th Cir. 2026) (en banc) ........ 10

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973) ........ 20

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) ........ 26

*City of L.A. Police Dep't v. United Rep. Publ'g Co.*,
528 U.S. 32 (1999) ........ 13

*Comput. & Commc'ns Indus. Ass'n v. Uthmeier*,
2025 WL 3458571 (11th Cir. Nov. 25, 2025) ........ 2, 22-25, 27, 28

*Courthouse News Serv. v. Smith*,
126 F.4th 899 (4th Cir. 2025) ........ 23

*Erznoznik v. City of Jacksonville*,
422 U.S. 205 (1975) ........ 21

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) ........ 20

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025) ........ 17, 22, 24, 25

*In re Georgia Senate Bill 202*,
160 F.4th 1171 (11th Cir. 2025) ........ 16

*Hulbert v. Pope*,
70 F.4th 726 (4th Cir. 2023) ............................................................. 18

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) ............................................................. 12

*McCullen v. Coakley*,
573 U.S. 464 (2014) ............................................................. 18, 20, 22

*Miranda v. Garland*,
34 F.4th 338 (4th Cir. 2022) ............................................................. 27

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ............................................................. 3, 14, 15, 16

*NetChoice, LLC v. Bonta*,
152 F.4th 1002 (9th Cir. 2025) ............................................................. 16, 18, 21

*NetChoice, LLC v. Fitch*,
2025 WL 2078435 (5th Cir. July 17, 2025) ............................................................. 2

*NetChoice, LLC v. Yost*,
__ F.4th __, 2026 WL 1758907 (6th Cir. June 18, 2026) ............................................................. 2, 13-18, 22, 23, 26

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................. 10, 28

*Packingham v. North Carolina*,
582 U.S. 98 (2017) ............................................................. 22

*Pierce v. N.C. State Bd. of Elections*,
97 F.4th 194 (4th Cir. 2024) ............................................................. 10

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ............................................................. 18

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
467 U.S. 947 (1984) ............................................................. 12, 13

*Singleton v. Wulff*,
428 U.S. 106 (1976) (plurality opinion) ............................................................. 13

*Tenn. Conf. of the NAACP v. Lee*,
105 F.4th 888 (6th Cir. 2024) .......... 11

*TikTok Inc. v. Garland*,
604 U.S. 56 (2025) .......... 21

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 27

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994) .......... 21

**Statutes & Rules**

28 U.S.C. § 1292(a)(1) .......... 9

Va. Code § 59.1-575 .......... 6, 19, 20

Va. Code § 59.1-577.1 .......... 6

Va. Code § 59.1-577.1(B) .......... 5, 18

Va. Code § 59.1-584(A) .......... 6

Va. Code § 59.1-584(B) .......... 6, 8

Va. Code § 59.1-584(E) .......... 6

Fed. R. App. P. 8(a)(2)(A)(i) .......... 11

Fed. R. App. P. 8(a)(2)(A)(ii) .......... 2, 11

4th Cir. R. 27(a) .......... 4

**Other Authorities**

ATTORNEY GENERAL NEWS RELEASE, *Attorney General Jay Jones Takes Steps to Keep Virginia's Children Safe from Predatory Social Media Companies*,https://tinyurl.com/y3p96smd .......... 8

U.S. Surgeon General's Advisory, *Surgeon General's Warning on the Harms of Screen Use* (May 20, 2026), https://tinyurl.com/3c9crazb ........................................................ 6

## INTRODUCTION

Virginia files this renewed motion for a stay of the district court's preliminary injunction pending appeal. Social media is addictive and harmful to children. Virginia's legislature unanimously enacted SB 854, the Parental Control Provision, giving parents a tool and recommendation to combat the epidemic facing their children. The statute strikes a careful balance between social media access and overuse, requiring a one-hour daily default setting—which parents can adjust up or down—per platform, per day, for children under 16.

NetChoice mounted a facial, pre-enforcement challenge to the law, claiming it violates the First Amendment. But NetChoice's record was devoid of facts; it did not challenge that social media is harmful or submit evidence regarding enforcement. Despite these deficiencies, and despite the unrebutted evidence of social media's harm to Virginia's children, the district court preliminarily enjoined the enforcement of this much-needed statute.

Previously, Virginia moved this Court for a stay of the injunction pending appeal. Denying the motion on procedural grounds, this Court directed Virginia to seek that relief in the district court first. The

Commonwealth did so, but the district court has not ruled on that motion in over 75 days and so "failed to afford the relief requested." Fed. R. App. P. 8(a)(2)(A)(ii). Virginia thus properly returns to this Court for relief.

The Court should stay the injunction pending appeal. Virginia is likely to succeed on the merits of its appeal. And the Commonwealth will be irreparably harmed if it cannot protect its children. The Sixth Circuit recently upheld a similar Ohio statute as constitutional. *NetChoice, LLC v. Yost*, __ F.4th __, 2026 WL 1758907 (6th Cir. June 18, 2026). And the Fifth and Eleventh Circuits stayed preliminary injunctions against similar Mississippi and Florida laws pending appeal. *See NetChoice, LLC v. Fitch*, 2025 WL 2078435 (5th Cir. July 17, 2025), *declining to lift stay*, 145 S. Ct. 2658 (2025); *Comput. & Commc'ns Indus. Ass'n v. Uthmeier*, 2025 WL 3458571 (11th Cir. Nov. 25, 2025). A stay is likewise required here.

In granting the preliminary injunction, the district court made four fundamental errors, each warranting vacatur or reversal.

*First*, the district court improperly allowed NetChoice to speak for Virginia's children. No child or parent has challenged Virginia's law. And

NetChoice lacks third-party standing to assert the rights of the children its members seek to addict.

*Second*, the district court misconstrued the facial challenge standard. Despite the recent reminder in *Moody v. NetChoice, LLC*, 603 U.S. 707, 724-26 (2024), the court did not engage with the Parental Control Provision's full scope or weigh its constitutional versus unconstitutional applications. The court categorically enjoined Virginia's statute without making any factual findings or requiring NetChoice to provide evidence of the Provision's actual impact (if any) on speech.

*Third*, the district court misread the Provision. The Provision is content neutral and so subject to intermediate scrutiny; it imposes a one-hour default on all social media platforms, no matter their content. Social media platforms are covered—and non-social media sites are excluded—no matter their subject matter, messages, or viewpoints.

*Fourth*, the district court distorted the intermediate scrutiny standard, demanding that the Provision exactly fit the problem at hand. But the Provision is more than sufficiently tailored to survive intermediate scrutiny. The one-hour adjustable limit targets social media addiction and imposes only incidental hurdles to accessing social media.

Nor is Virginia limited to the tools that platforms have voluntarily provided in protecting its children—which would leave the Commonwealth defenseless. In any event, the Provision survives strict scrutiny, being the most narrowly tailored means to serve Virginia's compelling interest in protecting its children.

Incorrectly resolving the merits, the district court neglected the other preliminary-injunction factors, including Virginia's and the public's overwhelming interest in protecting children. For those same reasons, the balance of the equities favors staying the injunction pending appeal. Virginia and its children suffer irreparable harm each day the injunction is in effect, and it should be stayed pending appeal.[1]

## BACKGROUND

### A. Virginia enacts the Parental Control Provision to stop a youth public health crisis.

The Parental Control Provision requires social media platforms to "limit a minor's use of [a] social media platform to one hour per day" per platform, and to "allow a parent to give verifiable parental consent to

[1] NetChoice opposes this renewed motion for a stay pending appeal and intends to file an opposition. 4th Cir. R. 27(a). NetChoice consents to expedited consideration of the motion.

increase or decrease the daily time limit." Va. Code § 59.1-577.1(B). The statute aims to protect children from social media addiction and to return control to parents.

Social media's features—customized feeds, autoplay, infinite scrolling, push notifications, and public validation—make it addictive, particularly to kids. JA154-155, JA178. Non-stop scrolling rewires children's brains in ways similar to those "seen in individuals with substance use or gambling addictions." JA156, JA174, JA178. The longer a child spends on social media, the greater the harms. JA163-164.

Studies have tied too much social media to "lower self-esteem," "greater loneliness," "body image issues," "disordered eating," ADHD, and higher rates of anxiety and depression. JA158-159. Those mental health disorders are now at an all-time high among Virginia's children. JA202. The situation is so dire that the prior U.S. Surgeon General declared a public health crisis, calling on States to protect their children. JA182-184. *Another* warning was recently issued about screen time's negative effects on children, again urging regulators to take action. *See* U.S. Surgeon General's Advisory, *Surgeon General's Warning on the Harms of Screen Use* (May 20, 2026), https://tinyurl.com/3c9crazb.

Virginia took up the call. After two years of deliberations, the Commonwealth required social media companies to impose a default setting for children under 16, adjustable by their parents: one hour of access per day, per social media platform. Va. Code § 59.1-577.1. The statute—publicly supported by NetChoice member Meta during the legislative process, JA238—ensures that minors can meaningfully access social media platforms while protecting them from addiction.

This Parental Control Provision applies only to social media platforms, defined as "public or semipublic Internet-based service[s] or application[s]" that "[c]onnect[] users in order to allow users to interact socially with each other within such service or application." Va. Code § 59.1-575. It excludes online forums that primarily contain "content preselected by the provider and not generated by users" "and for which any chat, comments, or interactive functionality is incidental to, directly related to, or dependent on the provision of such content." *Id.* The Attorney General has "exclusive authority" to enforce the statute. Va. Code § 59.1-584(A)-(B), (E).

### B. The district court enjoins the Provision.

In late 2025, NetChoice challenged the Parental Control Provision, alleging it violates the First Amendment rights of social media platforms and Virginians. The district court granted a preliminary injunction on February 27, 2026. *See* JA28.

The district court found NetChoice likely to succeed on its First Amendment claim. The court held that NetChoice had standing to assert the rights of its member platforms and of Virginia's children. JA6-12. The court then concluded that the Provision is content based because the definition of "social media platform" "exempts certain subject matter," focusing on the statutory *examples*—"news, sports, entertainment, ecommerce, or interactive gaming content"—of forums with "content preselected by the provider." JA16, JA18. The court also faulted the Provision for regulating "user-generated" but not "provider-selected speech." JA18.

The court found that the Provision failed both strict and intermediate scrutiny. It recognized that—as "NetChoice concedes"—"Virginia has an interest in protecting children," and "this interest is compelling." JA20. But, finding the statute both overinclusive and

underinclusive, the court held that the Provision was not narrowly tailored because Virginia had not tried "other less restrictive means," like "launch[ing] advertising campaigns to ensure parents know how to use the [platforms'] current tools." JA20-22.

Before the injunction, the Attorney General sent compliance letters to platforms, triggering the statute's notice-and-cure period. Va. Code § 59.1-584(B); *see* OFFICE OF THE ATTORNEY GENERAL NEWS RELEASE, *Attorney General Jay Jones Takes Steps to Keep Virginia's Children Safe from Predatory Social Media Companies*, https://tinyurl.com/y3p96smd. Those enforcement efforts are now paused.

**C. Virginia moves for a stay pending appeal.**

After the district court preliminarily enjoined enforcement of the Parental Control Provision, Virginia first moved for a stay pending appeal before this Court, on the basis that moving in the district court would be "futile." Va. Mot. for Stay of Prelim. Inj. Pending Appeal at 6 n.1 (Mar. 9, 2026), ECF No. 6-1. This Court denied the motion because the Commonwealth did not first move in the district court; the panel did not reach the merits. Order Denying Mot. to Stay at 2 (Apr. 10, 2026), ECF No. 25.

Within days, Virginia moved to stay in the district court. Def.'s Mot. to Stay Prelim. Inj. Pending Appeal (Apr. 15, 2026), ECF No. 56. The Commonwealth requested expedited briefing, and respectfully asked for a ruling by April 27. Def.'s Mem. in Supp. of Mot. to Stay Prel. Inj. Pending Appeal at 3 (Apr. 15, 2026), ECF No. 58. The district court did not act on the expedited-briefing motion, and NetChoice declined to expedite its opposition. The motion to stay has been fully briefed since May 1. Def.'s Reply Mot. to Stay, ECF No. 63. The district court has not ruled on the motion. Merits briefing in this Court concluded on June 12. Oral argument is not yet scheduled.

NetChoice has moved to stay discovery in the district court pending the resolution of this appeal. Mot. to Stay Dist. Ct. Proceedings Pending Appeal (May 19, 2026), ECF No. 67. That motion likewise remains pending.

## STANDARD OF REVIEW

Jurisdiction is proper under 28 U.S.C. § 1292(a)(1). For a stay pending appeal, the movant must show that (1) it is likely to succeed on the merits of the appeal, (2) it will be irreparably injured during the appeal absent a stay, (3) the stay will not "substantially injure the other

parties interested in the proceeding," and (4) the public interest favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The first two factors . . . are the most critical." *Id.*

Virginia appeals a preliminary injunction, "an extraordinary remedy never awarded as of right." *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 366 (4th Cir. 2026) (en banc). The plaintiff must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* The grant of a preliminary injunction is reviewed for abuse of discretion, but legal conclusions are reviewed "de novo." *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 210 (4th Cir. 2024).

## ARGUMENT

The preliminary injunction should be stayed pending appeal. Virginia is likely to succeed on the merits, and the equities favor the Commonwealth.

## I. Virginia's renewed motion is procedurally proper.

Virginia may bring this motion. This Court denied Virginia's first stay motion on procedural grounds because the Commonwealth did not initially seek relief in the district court. Order Denying Mot. to Stay at 2 (citing Fed. R. App. P. 8(a)(2)(A)(i)). Virginia then moved in the district court, and that court "failed to afford the relief requested," having not ruled on the fully-briefed motion for over two months. Fed. R. App. P. 8(a)(2)(A)(ii); *see Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 n.5 (9th Cir. 2020) (finding that district court had "failed to afford the relief requested" when stay motion had been pending for three weeks); *accord Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 899 (6th Cir. 2024). This motion is now ripe for this Court's review.

## II. Virginia is likely to succeed on the merits of its appeal.

The Parental Control Provision does not violate the First Amendment. It is a content-neutral statute that readily survives intermediate and strict scrutiny.[2]

---

[2] Virginia incorporates its merits briefing.

### A. NetChoice lacks standing to assert the rights of Virginia's children.

The district court first erred by permitting NetChoice to assert the First Amendment rights of the very children its member platforms target for addiction. *See* JA10-12. The clear conflict of interest between social media platforms and child users precludes NetChoice from establishing third-party standing based on Virginia's children.

Third-party standing represents a limited exception to the general rule that litigants must assert their own interests and cannot rest their claims on the rights of parties not before the court. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quotations omitted). This prudential limitation ensures that courts avoid "premature interpretations of statutes in areas where their constitutional application might be cloudy" and "assures the court that the issues before it will be concrete and sharply presented." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984) (quotations omitted). A plaintiff may assert a third party's rights only if the plaintiff can demonstrate, among other elements, that the plaintiff "is fully, or very nearly, as effective a

proponent of the right" as the third party. *Singleton v. Wulff*, 428 U.S. 106, 114-15 (1976) (plurality opinion).

The First Amendment's overbreadth doctrine does not change that calculus. *See Yost*, 2026 WL 1758907, at *7 (Clay, J., lead opinion). Courts entertain overbreadth claims "with hesitation," and "only as a last resort." *City of L.A. Police Dep't v. United Rep. Publ'g Co.*, 528 U.S. 32, 39 (1999). A plaintiff may assert the speech rights of third parties only if it can "be expected satisfactorily to frame the issues" on their behalf. *Munson*, 467 U.S. at 958.

NetChoice cannot meet that standard in this facial challenge because NetChoice and its members' interests sharply diverge from children, as the Sixth Circuit recently recognized. *Yost*, 2026 WL 1758907, at *7 (Clay, J., lead opinion); *id.* at *29 (Batchelder, J., concurring in judgment). NetChoice's interests—to "minimiz[e] burdens" on social media platforms, JA44 —are far from "completely consistent" with the interests of the children those platforms aim to addict. *Munson*, 467 U.S. at 958. Indeed, the court below found that social media "present[s] real dangers" to children, "including the danger of addiction," and that "minors are particularly susceptible to [social media's] addictive

features." JA2-3. By employing features that attract and addict children, social media platforms create a dynamic very different from a standard vendor-customer relationship. *See Yost*, 2026 WL 1758907, at *9 (Clay, J., lead opinion). With no child or parent participating in this litigation, the Court "cannot be sure that a well-informed, rational [c]hild [or parent] would reject the Act's protections or advocate for precisely the same contours of First Amendment doctrine as NetChoice does." *Id.* at *7. NetChoice cannot stand in their shoes.

### B. The district court misapplied the facial-challenge standard.

The district court subjected the Parental Control Provision to the wrong test, missing many of the statute's applications while focusing myopically on NetChoice's hypotheticals. This error alone warrants vacatur or reversal. *See, e.g.*, *Moody*, 603 U.S. at 717-18; *Yost*, 2026 WL 1758907, at *29-30 (Batchelder, J., concurring in judgment).

1. The district court applied the wrong standard. "NetChoice asserts a facial challenge," seeking to invalidate the statute not only as to the platforms but as to anyone. JA9. By design, such facial challenges are "hard to win." *Moody*, 603 U.S. at 723. Under the overbreadth doctrine, First Amendment plaintiffs must demonstrate that "the law's

unconstitutional applications substantially outweigh its constitutional ones." *Moody*, 603 U.S. at 724. This requires the court to "perform a full-scope review of the law's coverage and an in-depth review of the law's applications" before "weighing the unconstitutional versus constitutional applications." JA13-14; *accord Yost*, 2026 WL 1758907, at *29 (Batchelder, J., concurring in judgment).

The district court declined to conduct that analysis: "NetChoice asserts a facial challenge, which does not require a fact-intensive analysis of the statute's application." JA9, JA14. So the court did not fully "assess [the Provision's] scope," nor did it catalogue all of its possible applications, figure out which "violate the First Amendment," and then "measure them against the rest." *Moody*, 603 U.S. at 724-25.

The court mistakenly deemed that analysis unnecessary. It reasoned, "[f]acial challenges can take two different approaches," one "assert[ing] that the statute is unconstitutional in every conceivable application" and the other, "taken in a challenge for overbreadth," that requires determining "whether 'a substantial number' of the statute's applications are unconstitutional, judged in relation to the statute's 'plainly legitimate sweep.'" JA13-14 (quoting *Moody*, 603 U.S. at 723).

According to the district court, NetChoice pursued the first type and "seeks to invalidate SB 854 based on its content restrictions, not overbreadth." JA14.

But NetChoice did not ask to be in that first category—which would require it to carry the impossible burden of proving *all* applications of the Provision unconstitutional. *Compare* Mem. in Supp. of Mot. for Prelim. Inj. at 13-14, *with* JA14. Instead, NetChoice's challenge falls—like all First Amendment facial challenges—into the second. *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1019 (9th Cir. 2025); *Yost*, 2026 WL 1758907, at *29-30 (Batchelder, J., concurring in judgment).

So even though "NetChoice seeks to invalidate SB 854 based on its content restrictions," "the appropriate framework *does* [ ] require a weighing of SB 854's applications." JA14 (emphasis added). And even if weighing wasn't required, the district court still had to "systematically" catalogue and address "*every application*," *In re Georgia Senate Bill 202*, 160 F.4th 1171, 1177 (11th Cir. 2025); *Bonta*, 152 F.4th at 1020-21 (emphasis added), to determine "that SB 854 is unconstitutional in *every application*," JA14 (emphasis added); *see Yost*, 2026 WL 1758907, at *29-

31 (Batchelder, J., concurring in judgment) (rejecting NetChoice's facial challenge to similar Ohio statute for failing to develop a factual record).

2. Refusing to catalogue the Parental Control Provision's applications, the district court missed many—including when the statute is likely only to have an "incidental effect on protected speech." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 478 (2025). The Provision does not meaningfully impair adults' access to social media. "[I]t simply requires them to verify their age before accessing it," just as they would have to provide proof of age "to obtain alcohol[.]" *Id.* at 479, 481-82 (citations omitted); *contra* JA21-22. And for minors, the Provision is not a ban from social media, nor does it "block minors' access to protected speech." *Contra* JA21. It is a one-hour parentally adjustable default *per platform per day*. The record is devoid of proof—NetChoice's burden to adduce—that any child will be prevented from accessing desired content or that any platform will be unable to convey their own expression in that time. The Provision is *at least* constitutional in this substantial number of applications, making a facial challenge categorically inappropriate.

### C. The Parental Control Provision is content neutral.

The district court also erred in concluding that the Provision is content based. JA15. States may regulate the content of speech only in narrow circumstances. But the government can "regulate features of speech unrelated to its content," *McCullen v. Coakley*, 573 U.S. 464, 477 (2014), "specify[ing] when, where, or how speech may be delivered," *Hulbert v. Pope*, 70 F.4th 726, 733 (4th Cir. 2023). These content-neutral regulations face intermediate scrutiny and need only be narrowly tailored to serve a significant governmental interest.

#### 1. The Provision does not discriminate based on content.

The Parental Control Provision sets a parentally adjustable one-hour default on any social media platform. Va. Code § 59.1-577.1(B). This default applies "without reference to the content of the regulated speech"—no matter whether users are talking sports, politics, or celebrities. *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015). It is content neutral. *Cf. Bonta*, 152 F.4th at 1016 (restricting child users' access to "like counts" was content based because it turned on "the idea or message expressed" by likes); *Yost*, 2026 WL 1758907, at *12 (Clay, J., lead opinion) (holding statute content based because it regulated platforms

"reasonably anticipated to be accessed by children" based on their "subject matter" and "visual" and "audio content").

The district court erroneously held that the Provision discriminates based on content, confusing statutory examples as content-based carve outs. To be a "social media platform," a site must "[c]onnect[] users in order to allow [them] to interact socially with each other" and permit users to

- "[c]onstruct a public or semipublic profile,"
- "[p]opulate a public list of other users with whom such user shares a social connection," and
- "[c]reate or post content viewable by other users, including content on message boards, in chat rooms, or through a landing page or main feed that presents the user with content generated by other users."

Va. Code § 59.1-575. To clarify that these functional features do not encompass websites that nobody considers social media, the Provision also states that "social media platform" does not include forums where "content" is "preselected by the provider and not generated by users":

> No service or application that consists primarily of news, sports, entertainment, ecommerce, or content preselected by the provider and not generated by users, and for which any chat, comments, or interactive functionality is incidental to, directly related to, or dependent on the provision of such content, or that is for interactive gaming, *shall be considered to meet this criterion on the basis of that function alone.*

*Id.* (emphasis added).

The district court misread this language—the consequence of NetChoice bringing a pre-enforcement challenge before the Attorney General or any Virginia court had the opportunity to interpret the statute and explain how it operates, *see Broadrick v. Oklahoma*, 413 U.S. 601, 617-18 (1973)—and held that the Provision discriminates against protected speech that is not "news, sports, entertainment, ecommerce" or "interactive gaming" because it "exempt[s] [those] subject matter categories" from the statute. JA16-18.

The Provision does no such thing. It offers "news, sports, entertainment, ecommerce" or "interactive gaming" as *examples* of "content preselected by the provider and not generated by users." Va. Code § 59.1-575; *see Facebook, Inc. v. Duguid*, 592 U.S. 395, 402-03 (2021) (explaining the series-qualifier canon). No website is exempted based on its content. Instead, the definition turns on whether any "interactive functionality" is secondary to provider-generated content—and thus "regulate[s] features of speech unrelated to its content." *McCullen*, 573 U.S. at 477.

### 2. The Provision draws permissible distinctions between speakers.

The district court also deemed the Parental Control Provision content based because in regulating only social media platforms, the statute "favors provider-selected speech over user-generated speech." JA18. But nothing about that distinction discriminates based on *content*.

Speaker-based distinctions are permissible so long as they do not reflect a "content preference" and are "justified by some special characteristic of the particular speaker being regulated." *TikTok Inc. v. Garland*, 604 U.S. 56, 72-73 (2025) (cleaned up) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658, 660-61 (1994)). Nothing in the record suggests that the Provision intended to target "ideas or images that [Virginia] thinks unsuitable" for children. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213-14 (1975). And Virginia had good reason to single out social media platforms: studies establish that excessive exposure to social media platforms uniquely triggers neural pathways comparable to addiction. JA154-157, JA178-179.

The Provision's speaker preference cannot "be treated as though it is content based." JA18; *see Bonta*, 152 F.4th at 1016 (rejecting argument that "focus on social media makes the entire act content based").

### D. The Provision survives intermediate scrutiny.

Contrary to the district court's ruling, the content-neutral Parental Control Provision readily survives intermediate scrutiny. *McCullen*, 573 U.S. at 479-80. For intermediate scrutiny, the regulation must "advance[] important governmental interests unrelated to the suppression of free speech" and must "not burden substantially more speech than necessary to further those interests." *Free Speech Coal.*, 606 U.S. at 471.

Virginia does not seek to suppress any viewpoint or message, but instead to "protect[] its youth from the harms associated with the addictive aspects of social media." JA27. This is a "compelling interest," as the district court recognized, NetChoice conceded, and sister circuits have held. *Id.*; *accord Uthmeier*, 2025 WL 3458571, at *6; *Yost*, 2026 WL 1758907, at *12 (Clay, J., lead opinion).

The Provision is narrowly tailored to remedy the harm at hand. It does not bar any child from any social media platform, nor does it exclude them from any features or content on those platforms. *Cf. Packingham v. North Carolina*, 582 U.S. 98, 107-08 (2017) (law completely prohibiting sex offenders from accessing any social media sites). Instead, the Provision sets a one-hour *adjustable* default *per platform* to target the

root of the problem: addicted children spending hours a day doomscrolling. JA154-157, JA160-161, JA174, JA178. This time limit "alleviates that harm in a direct and material way" by giving parents control without preventing children from engaging in their desired speech. *Courthouse News Serv. v. Smith*, 126 F.4th 899, 913 (4th Cir. 2025) (cleaned up); *but see Uthmeier*, 2025 WL 3458571, at *6 (finding narrowly tailored a statute banning child access to social media without parental approval); *accord Yost*, 2026 WL 1758907, at *14 (Clay, J., lead opinion).

Holding to the contrary, the district court effectively applied strict scrutiny by another name.

1. The district court faulted the Parental Control Provision for being overinclusive because it "covers a significant amount of protected speech." JA23. But nothing in the record suggests that the Provision "blocks minors' access" to any speech or that minors "would be barred from watching an online church service" or "science or history programming." JA21. Minors must simply get their parents' permission to view over an hour on a particular platform—at most an incidental burden.

Either way, intermediate scrutiny does not demand that a statute limit its reach to "only unprotected speech," or that it be "the least intrusive means of achieving the desired end." *Uthmeier*, 2025 WL 3458571, at *6, *8 (quotations omitted). The statute may cover protected speech so long as it does not "burden s*ubstantially* more speech than is necessary" to address the problem. *Free Speech Coal.*, 606 U.S. at 496 (quotations omitted) (emphasis added). So it is here. Even if parents do not change the limit, children must only to look to other media. *See Uthmeier*, 2025 WL 3458571, at *8.

The district court further reasoned that "age verification burdens adults' . . . rights to access protected speech." JA23. But age verification is a "modest" and common tool used to "protect[] children" while "allowing adults full access to the content in question." *Free Speech Coal.*, 606 U.S. at 496 (upholding age verification for adults accessing pornography as "sufficiently tailored").

2. The district court also deemed the Provision underinclusive because it does not address digital gaming, citing extra-record studies suggesting that gaming can be addictive. JA23-24. But a State need not "address all aspects of a problem in one fell swoop." *Id.* at 498. Social

media poses particular harms to children. Virginia need not regulate all addictive products in the same statute.

3. Finally, the district court faulted Virginia for not trying other means to resolve the problem, reasoning that "parents have ample tools to limit minors' access to social media" and suggesting that the Commonwealth "work with companies and launch advertising campaigns to ensure parents know how to use the current tools effectively." JA22. But Virginia did try these tools. Va. Merits Br. 31 (June 12, 2026), ECF No. 46. Besides, intermediate scrutiny does not demand that the government first try out "some less-speech-restrictive alternative." *Free Speech Coal.*, 606 U.S. at 497-98 (rejecting that State had to "encourag[e] parents to install content-filtering software on their children's devices" before requiring age verification). The General Assembly was entitled to conclude "that parental controls were not working" and that "simply offering parents a new tool . . . would not suffice." *Uthmeier*, 2025 WL 3458571, at *8.

### E. The Provision survives strict scrutiny.

Even if the Parental Control Provision is content based, it still survives strict scrutiny because it is the least restrictive means to serve

the Commonwealth's compelling interest. Va. Opp. to Prelim. Injun. at 18 n.7 (Dec. 19, 2025), ECF No. 16. Virginia has not banned minors from social media altogether. *Cf. Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011) (preventing minors from purchasing violent video games). Instead, it has imposed a one-hour daily default per platform. *See Yost*, 2026 WL 1758907, at *12-15 (Clay, J., lead opinion) (holding that Ohio law barring minors from accessing social media at all absent parental consent survives strict scrutiny). This is no more restrictive than necessary to address the serious harms of social media addiction. The Provision does not limit "what ideas [platforms] may circulate," nor limit access more than required to solve the harm at hand. *Id.* at *13. And contrary to the district court's suggestion, "informing parents about existing private tools for monitoring their children's activity would not effectively prevent the harms that minors face." *Id.* at *14.

## II. The equities favor a stay pending appeal.

Not only is Virginia likely to win on appeal, but the equities strongly favor a stay.

### A. Virginia will be irreparably harmed.

The Commonwealth suffers irreparable harm while its enforcement efforts are at a standstill—and have been for four months. Preventing

Virginia from enforcing its law, particularly a law protecting children, "clearly inflicts irreparable harm on the [Commonwealth]." *Abbott v. Perez*, 585 U.S. 579, 602-03 & n.17 (2018). Indeed, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (cleaned up).

### B. NetChoice will not suffer irreparable injury.

NetChoice suffers no harm if the Parental Control Provision is in effect pending appeal. The Provision satisfies the First Amendment, and "[w]ithout [an] alleged constitutional injury," NetChoice has no "irreparable harm." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022). Either way, NetChoice's purported "loss of First Amendment freedoms" is not so significant as to outweigh the harms to the Commonwealth and its youth. JA24; *see Uthmeier*, 2025 WL 3458571, at *9. Platforms will still be able to speak to adult users for as long as they want, and vice versa. And the Provision permits both children and social media platforms to convey any content they desire in their parentally allotted time.

### C. The public interest favors staying the injunction.

Finally, public interest demands a stay. Virginia is facing a youth mental-health crisis. Anxiety, depression, self-harm, and suicide have skyrocketed. JA157-161. Yet platforms continue to provide addictive features to Virginia's children. To be sure, as the district court noted, the public has an interest in avoiding constitutional violations. JA26. But there is no infringement here. And the public has an even more compelling interest "in the protection of children and the enforcement of [a] law that seeks to do just that." *Uthmeier*, 2025 WL 3458571, at *10. Platforms' desire to keep kids scrolling does not outweigh the public's interest in the "prompt execution" of a democratically enacted law protecting the Commonwealth's most vulnerable. *Nken*, 556 U.S. at 427.

## CONCLUSION

This Court should grant a stay pending appeal.

Dated: July 2, 2026

Respectfully submitted,

*/s/ Benjamin L. Hatch*

Jay Jones
ATTORNEY GENERAL
Tillman J. Breckenridge
SOLICITOR GENERAL OF VIRGINIA
Megan C. Keenan
DEPUTY SOLICITOR GENERAL
Triston Chase O'Savio
ASSISTANT SOLICITOR GENERAL
202 North 9th Street
Richmond, VA 23219
T: 804.786.7704
solicitorgeneral@oag.state.va.us

Benjamin L. Hatch
MCGUIREWOODS LLP
World Trade Center
101 West Main Street
Suite 9000
Norfolk, Virginia 23510
T: 757.640.3727
F: 757.640.3947
bhatch@mcguirewoods.com

Erin B. Ashwell
John D. Adams
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: 804.775.1002
F: 804.698.2002
eashwell@mcguirewoods.com
jadams@mcguirewoods.com

*Counsel for Defendant-Appellant Jay Jones, in His Official Capacity as Attorney General for the Commonwealth of Virginia*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,188 words, excluding the parts exempted by Fed. R. App. P. 27(a)(2)(B).

This motion complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch

*Counsel for Defendant-Appellant Jay Jones, in His Official Capacity as Attorney General for the Commonwealth of Virginia*

## CERTIFICATE OF SERVICE

I certify that on July 2, 2026, the foregoing document was electronically filed with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system, which will also serve all counsel of record.

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch

*Counsel for Defendant-Appellant Jay Jones, in His Official Capacity as Attorney General for the Commonwealth of Virginia*